**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| MICHELLE JOHNSON and CHRISTINA SKELDON, individually, and on behalf of other persons similarly situated<br><br>Plaintiff,<br><br>v.<br><br>NCR CORPORATION,<br><br>Defendant. | No. 22-cv-03061<br><br>Hon. Sara Ellis |

## NCR CORPORATION'S ANSWER TO PLAINTIFFS' CLASS ACTION COMPLAINT

NCR Corporation ("NCR"), by and through its counsel, hereby answers Plaintiffs' Class Action Complaint (Dkt. 1-1).

For ease of reference, NCR has included in this Answer the captions, headings, and footnotes used in the Class Action Complaint, but headings, sub-headings, and footnotes do not constitute well-pleaded allegations of fact and therefore require no response. Further, unless expressly stated otherwise, NCR denies, generally and specifically, each and every allegation in the Class Action Complaint, including any allegations in the preamble, unnumbered and numbered paragraphs, titles, table of contents, and characterization of documents, and specifically denies any liability to Plaintiffs. To the extent not expressly denied, all allegations for which NCR denies possessing knowledge or information sufficient to form a belief are denied.

NCR further states that its investigation of the present matter is ongoing. Accordingly, NCR reserves the right to amend or supplement its Answer as may be necessary. In response to the numbered paragraphs in the Class Action Complaint, NCR states as follows:

## NATURE OF THE ACTION

1.      Defendant NCR is a vendor of hardware, software, and service solutions intended to power businesses across a wide swath of sectors, including banking, telecommunications, retail, and restaurants.

**Answer:** NCR admits that it is a vendor of hardware, software, and service solutions, and that it provides services to different sectors including banking, retail, and restaurants. NCR denies the remaining allegations in this Paragraph.

2.      Chief among the products that NCR develops, manufactures, and sells to its customers in the restaurant industry include biometric-enabled Point-of-Sale ("POS") systems, which are comprised of POS terminals, like the NCR CX5, and cloud-based POS software, like NCR Aloha.

**Answer:** NCR admits that it has customers in the restaurant industry and that the products it sells to customers in the restaurant industry include Point-of-Sale ("POS") systems. NCR denies the remaining allegations in this Paragraph.

3.      NCR develops and markets its POS systems as an "all-in-one" solution, configuring its POS software solutions so that they feature various applications capable of performing essential management functions, including tracking and managing workers' time and attendance.

**Answer:** NCR admits that it develops and markets POS systems, and that the POS systems feature various applications, including optional applications for labor and inventory management. NCR denies the remaining allegations in this Paragraph.

4.      Each NCR POS terminal model is configured so that it can be used in conjunction with a biometric fingerprint scanner.

**Answer:** Plaintiffs' allegation that the POS terminal is "biometric" is a legal conclusion for which no response is required. To the extent a response is required, NCR denies the allegations in this Paragraph.

5.     When an NCR POS terminal is configured to be biometric-enabled using a biometric fingerprint scanner, a worker is required to scan his or her fingerprint at the biometric-enabled NCR POS system in order to access the terminal, whether to clock-in or clock-out or to input a food order.

**Answer:** NCR denies the allegations in this Paragraph.

6.     Typically, biometric devices function by capturing an image of a worker's fingerprint when the worker enrolls at the biometric device. From the image, unique features of the fingerprint are extracted to create a unique template associated with the worker, which is stored in an NCR database. Each time the worker subsequently provides his or her fingerprint at the biometric device, the device compares the unique features of the input fingerprint against the stored templates of each set of fingerprints enrolled to verify the worker's identity.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies that the database is an "NCR database" or that its terminals are "biometric-enabled." Further, NCR lacks knowledge or information as to what is "typical" and therefore denies the allegations in this Paragraph on that basis. NCR denies the remaining allegations in this Paragraph.

7.     When an employer opts to use the time and attendance application on a biometric-enabled NCR POS system, workers' biometric data captured at the employer's biometric-enabled POS system is automatically uploaded to an NCR database, where it is managed, maintained, and stored on NCR's hosted environments and servers.

**Answer:** The allegations of this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies that any employer-maintained database is an "NCR database," that any NCR system is "biometric-enabled," or that any NCR system is capable of capturing "biometric data" within the meaning of 740 Ill. Comp. Stat. 14/1 *et seq*. NCR denies the remaining allegations in this Paragraph.

8.     NCR collected and/or otherwise obtained workers' biometric data captured by the biometric-enabled POS terminals optimized with NCR's POS software, including but not limited to NCR Aloha.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies the allegations in this Paragraph.

9.     Despite its collection of biometric data from workers whose employers utilize its services, NCR fails to secure informed consent from subjects of collection, authorizing it to collect, store, use, or disclose their biometric data.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies the allegations in this Paragraph.

10.    Biometrics are not relegated to esoteric comers of commerce. Many businesses and financial institutions have incorporated biometric applications into their workplace in the form of biometric timeclocks, and into consumer products, including such ubiquitous consumer products as checking accounts and cell phones.

**Answer:** NCR lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and therefore denies the same.

11.    While there are benefits to using biometric timekeeping devices in the workplace, there are also serious risks. Unlike key fobs or identification cards-which can be changed or replaced if stolen or compromised-fingerprints are unique, permanent biometric identifiers associated with each individual. This exposes individuals like Plaintiffs to serious and irreversible privacy risks. For example, if a database containing fingerprints or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed-like in the recent Clearview AI, Facebook/Cambridge Analytica, and Suprema data breaches-individuals have ***no*** means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

**Answer:** NCR lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph and therefore denies the same.

12.    An illegal market exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data-including fingerprints, iris scans, and facial photographs-of over a billion Indian

citizens. In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes.

**Answer:** NCR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore denies the same.

13.     Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.,* specifically to regulate companies that collect, obtain, store, and use Illinois citizens' biometric data.

**Answer:** NCR admits that Illinois enacted the Biometric Information Privacy Act. NCR refers to 740 Ill. Comp. Stat. 14/1 *et seq.* for a full and accurate account of its contents. NCR lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and therefore denies the same.

14.     Notwithstanding the clear and unequivocal requirements of the law, Defendant disregards Illinois workers' statutorily protected privacy rights and unlawfully collects, obtains, stores, disseminates, and uses their biometric data in violation of BIPA Specifically, Defendant has violated and continues to violate BIPA because it did not:

   a.   Properly inform Plaintiffs and others similarly situated in writing of the specific purpose and length of time for which their biometric data was being collected, obtained, stored, and used, as required by BIPA;

   b.   Obtain a written release from Plaintiffs and others similarly situated to collect, obtain, store, disseminate, or otherwise use their biometric data, as required by BIPA;

   c.   Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiffs' and other similarly-situated individuals' biometric data, as required by BIPA; and

   d.   Obtain consent from Plaintiffs and others similarly situated to disclose, redisclose, or otherwise disseminate their biometric data to a third party as required by BIPA.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged NCR admits that Paragraph 14 purports to refer to BIPA, and NCR refers to 740 Ill. Comp. Stat. 14/1 *et seq.* for a full and accurate account of its contents. NCR further admits that Paragraph 14 purports to refer to Plaintiffs, and outside

of this lawsuit, NCR has no relationship and has never communicated with Plaintiffs. NCR

denies the remaining allegations in this Paragraph.

15.     Accordingly, Plaintiffs seek an Order: (1) declaring that Defendant's conduct
violates BIPA; (2) requiring Defendant to cease the unlawful activities discussed herein; and (3)
awarding statutory damages to Plaintiffs and the proposed Class.

**Answer:** NCR admits that Plaintiffs seek the Order described, but NCR denies that it

violated BIPA, and further denies that Plaintiffs are entitled to any relief whatsoever, including

the relief sought in this Paragraph. NCR denies the remaining allegations in this Paragraph.

## PARTIES

16.     Plaintiff Michele Johnson is a natural person and a citizen of the State of Illinois.

**Answer:** NCR lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in this Paragraph and therefore denies the same.

17.     Plaintiff Christina Skeldon is a natural person and a citizen of the State of Illinois.

**Answer:** NCR lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in this Paragraph and therefore denies the same.

18.     Defendant NCR Corporation is a Maryland corporation that conducts business in
the State of Illinois.

**Answer:** NCR admits the allegations in this Paragraph.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over Defendant NCR pursuant to 735 ILCS § 5/2-209
because Defendant conducts business transactions in the State of Illinois, including at its Aloha
POS retail store located at 9701 W. Higgins Road, Suite 120, Rosemont, Illinois 60018,
committed the statutory violations alleged herein in Illinois, and is registered to conduct business
in Illinois.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no

response is required. To the extent facts are alleged, NCR admits it is registered to conduct

business in Illinois and denies the remaining allegations in this Paragraph.

20. Venue is proper in Cook County because Defendant conducts business in this State, conducts business transactions in Cook County, and committed at least some of the statutory violations alleged herein in Cook County, Illinois.

**Answer:** The allegations set forth in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR admits it conducts business in Cook County and denies the remaining allegations in this Paragraph.

## FACTUAL BACKGROUND

### I.    The Biometric Information Privacy Act

21. In the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS § 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing yet unregulated technology. *See* 740 ILCS § 14/5.

**Answer:** The allegations set forth in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR admits that the quoted statement appears in 740 Ill. Comp. Stat. 14/5(c) and refers to the statute for its full and accurate contents. NCR lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and therefore denies the same.

22. In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly, there was a serious risk that millions of fingerprint records-which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data-could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who used the company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather, to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

**Answer:** NCR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore denies the same.

23.     Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS § 14/5.

**Answer:** NCR admits that Illinois enacted BIPA in 2008. NCR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore denies the same.

24.     Additionally, to ensure compliance, BIPA provides that, for <u>each</u> violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS § 14/20.

**Answer:** The allegations set forth in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR admits this Paragraph purports to refer to 740 Ill. Comp. Stat. 14/20 of BIPA, and refers to the statute for a complete and accurate statement of its contents.

25.     BIPA is an informed consent statute that achieves its goal by making it unlawful for a company to, among other things, collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

   a. Informs the subject in writing that a biometric identifier or biometric information is being collected, stored, and used;

   b. Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, obtained, stored, and used; and

   c. Receives a written release executed by the subject of the biometric identifier or biometric information.

*See* 740 ILCS § 14/15(b).

**Answer:** The allegations set forth in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR admits that the language in sub-paragraphs (a) – (c) appears in 740 Ill. Comp. Stat. 14/15(b) of BIPA. NCR refers to 740 Ill.

Comp. Stat. 14/1 *et seq.* for a complete and accurate statement of its contents, and otherwise denies the allegations in this Paragraph.

26.     BIPA defines a "written release" as "informed written consent." 740 ILCS § 14/10.

**Answer:** The allegations set forth in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR admits that the quoted language appears in 740 Ill. Comp. Stat. 14/10 of BIPA. NCR refers to 740 Ill. Comp. Stat. 14/10 for a complete and accurate statement of its contents.

27.     Biometric identifiers include fingerprints, retina and iris scans, voiceprints, and scans of hand and face geometry. *See* 740 ILCS § 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id.*

**Answer:** The allegations set forth in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR refers to 740 Ill. Comp. Stat. 14/10 for a complete and accurate statement of its contents.

28.     BIPA establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. *See, e.g.,* 740 ILCS § 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for such disclosure. *See* 740 ILCS § 14/15(d)(1).

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR refers to 740 Ill. Comp. Stat. 14/15(c) and 740 Ill. Comp. Stat. 14/15(d) for a complete and accurate statement of their contents, and otherwise denies the allegations in this Paragraph.

29.     BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS § 14/15(c)) and requires companies to develop and comply with a written policy-made available to the public-establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS § 14/15(a).

**Answer:** The allegations set forth in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR refers to 740 Ill. Comp. Stat. 14/15(a) and 740 Ill. Comp. Stat. 15/14(c) for a complete and accurate statement of their contents, and otherwise denies the allegations in this Paragraph.

30.     The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and- most significantly- the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual, and, once compromised, an individual is at heightened risk for identity theft and left without any recourse.

**Answer:** NCR admits that the Illinois legislature enacted BIPA. NCR lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and therefore denies the same.

31.     BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics as well as protecting their rights to know the precise nature for which their biometrics are used and how they are being stored and ultimately destroyed. Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, obtain, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

**Answer:** The allegations set forth in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR admits that BIPA provides individuals with a private right of action. NCR refers to 740 Ill. Comp. Stat. 14/1 *et seq*. for a complete and accurate statement of the statute's contents, and otherwise denies the allegations in this Paragraph.

32.     Plaintiffs, like the Illinois legislature, recognize how imperative it is to keep biometric identifiers and biometric information secure. Biometric data, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

**Answer:** NCR lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in this Paragraph and therefore denies the same.

## II.     Defendant Violates the Biometric Information Privacy Act.

33.     By the time BIPA passed through the Illinois legislature in mid-2008, most companies who had experimented using individuals' biometric data stopped doing so.

**Answer:** NCR admits that the Illinois legislature passed BIPA in mid-2008. NCR lacks

knowledge or information sufficient to form a belief as to the truth of the allegations in this

Paragraph and therefore denies the same.

34.     However, NCR failed to take note of the shift in Illinois law governing the collection, obtainment, storage, use, and dissemination of biometric data. As a result, NCR continues to collect, obtain, store, use, and disseminate Illinois citizens' biometric data in violation of BIPA.

**Answer:** The allegations contained in this Paragraph consist of legal conclusions for

which no response is required. To the extent facts are alleged, NCR denies the allegations in this

Paragraph.

35.     NCR's biometric hardware and software, like other biometric technology, authenticate workers' identities by capturing and utilizing their biometric identifiers and/or information.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no

response is required. To the extent facts are alleged, NCR denies that it develops or sells

"biometric hardware" or "biometric software." NCR denies the remaining allegations in this

Paragraph.

36.     Specifically, when workers first use a biometric-enabled NCR POS system, they are required to have their fingerprint scanned in order to enroll them in an NCR database(s), from which NCR collects and/or otherwise obtains workers' biometric data. Thereafter, NCR again collects and/or otherwise obtains workers' fingerprint data upon each subsequent scan of

the workers' fingerprint to clock-in and clock-out of work or to otherwise access the POS terminal.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies that its terminals are "biometric-enabled," that any employer-maintained database is a "NCR database," or that NCR collects employees' "biometric data" within the meaning of 740 Ill. Comp. Stat. 14/1 *et seq*. NCR denies the remaining allegations in this Paragraph.

37. All biometric-enabled NCR POS systems are designed and constructed with a network interface, which provides for transmission of biometric data collected and/or obtained from biometric-enabled NCR POS systems to NCR's servers and to third-parties who host that data.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies that its terminals are "biometric-enabled" and denies the remaining allegations in this Paragraph.

38. NCR discloses workers' biometric data to third-parties, which receive, store, use, access, or otherwise process the biometric data for the purpose of providing their services, including the back-up storage of data and provision of IT services.

**Answer:** NCR lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding third parties and therefore denies the same. NCR denies the remaining allegations in this Paragraph.

39. NCR developed and markets cloud-based software platforms, like NCR Aloha, through which NCR actively manages, maintains, and stores data collected from its biometric-enabled POS terminals, including biometric data, in a single, centralized location on its hosted environments and servers.

**Answer:** NCR admits that it developed and markets cloud-based software platforms. NCR denies the remaining allegations in this Paragraph.

40. NCR accesses its servers, where data collected from its POS terminals is stored, for various purposes, including to provide support services to its employer-customers.

**Answer:** NCR denies the allegations in this Paragraph.

41. NCR fails to sufficiently inform workers enrolled with its biometric-enabled POS systems: that NCR is collecting, obtaining, storing, disseminating, or using their sensitive biometric data; the extent or the purposes for which it does so; or to whom the data is disclosed.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies the allegations in this Paragraph.

42. Defendant NCR fails to sufficiently inform workers that, through its biometric-enabled POS terminals and cloud-based POS software, it collects, maintains, stores, disseminates, and uses their biometric data; fails to inform workers that it discloses or disclosed their biometric data to other, currently unknown, third parties, which host the biometric data in their data centers; fails to properly inform workers of the purposes and duration for which it collects their sensitive biometric data; and fails to obtain written releases from workers before collecting, obtaining, and/or disseminating their biometric data.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies the allegations in this Paragraph.

43. Defendant did not create or maintain a written, publicly available policy identifying its retention schedule and guidelines for permanently destroying Plaintiffs' and other similarly- situated individuals' biometric data and did not and will not destroy Plaintiffs' and other similarly- situated individuals' biometric data when the initial purpose for collecting, capturing, or obtaining such data had been satisfied or within three years of the worker's last interaction with the company.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies the allegations in this Paragraph.

44. NCR profits from the use of workers' biometric data. For instance, NCR markets and distributes its biometric-enabled POS terminals and cloud-based software platforms to Illinois employers as a superior option to traditional POS solutions because it leverages scans of workers' biometric identifiers to create a verifiable, user-unique audit trail that can facilitate authentication and monitoring of POS terminal access and accurate time collection to help deter costly "buddy punching"- where one worker punches in to or out of a time clock for another (absent) worker.

**Answer:** NCR denies the allegations in this Paragraph.

45.     By marketing its biometric-enabled POS system in this manner, NCR obtains a competitive advantage over other POS systems, time and attendance solutions, and biometric verification companies and secures profits from its use of biometric data, all while failing to comply with the minimum requirements for handling workers' biometric data established by BIPA.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies the allegations in this Paragraph.

46.     The Pay by Touch bankruptcy that catalyzed the passage of BIPA, as well as the recent data breaches, highlight why such conduct - where workers are aware that they are providing a fingerprint but not aware to whom or for what purposes they are doing so - is dangerous. That bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers who exactly is collecting or obtaining their biometric data, where it will be transmitted and for what purposes, and for how long. Defendant disregards these obligations and workers' statutory rights and instead unlawfully collects, obtains, stores, uses and disseminates their biometric identifiers and information, without ever receiving the worker's informed written consent as required by BIPA.

**Answer:** NCR lacks knowledge or information or sufficient to form a belief as to the truth of the allegations in the first two sentences of this Paragraph, and therefore denies the same. The allegations in the third sentence of this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies the allegations.

47.     Remarkably, NCR has created the same situation that Pay by Touch did by assembling a database of biometric data through broadly deployed biometric data readers and integrated, cloud-based software platforms, but failed to comply with the law specifically designed to protect workers whose biometrics are collected in these circumstances. Defendant disregards these obligations and Illinois workers' statutory rights and instead unlawfully collects, captures, obtains, stores, uses, and disseminates workers' biometric identifiers and information without ever receiving the worker's informed written consent, as required by BIPA.

**Answer:** The allegations of this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies the allegations in this Paragraph.

48.     Workers enrolled with NCR's biometric-enabled POS terminals and software (or who have their biometric data maintained or stored by NCR) are not told what might happen to their biometric data if and when NCR merges with another company, or worse, if and when

NCR's business folds, or when the other third parties that have received their biometric data businesses fold.

**Answer:** NCR denies the allegations contained in this Paragraph.

49. Since Defendant did not first publish a BIPA-mandated data retention policy nor properly disclose the purposes for its collection, obtainment, and use of biometric data prior to its collection of biometric data, Plaintiffs and other similarly-situated workers enrolled with Defendant's biometric timekeeping devices and software have no idea whether Defendant sells, discloses, re-discloses, or otherwise disseminates their biometric data. Moreover, Plaintiffs and others similarly situated are not told whom Defendant currently disclose their biometric data to, or what might happen to their biometric data in the event of a merger or a bankruptcy.

**Answer:** The allegations in the first sentence of this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged in the first sentence of this Paragraph, NCR lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies the same. NCR denies the remaining allegations in this Paragraph.

50. These violations have raised a material risk that Plaintiffs' and other similarly-situated workers' biometric data will be unlawfully accessed by third parties.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies the allegations in this Paragraph.

51. By and through the actions detailed above, Defendant disregards Plaintiffs' and other similarly-situated individuals' legal rights in violation of BIPA.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies the allegations in this Paragraph.

### III.    Plaintiffs' Experience.

52.    Plaintiff Michele Johnson worked as a Cook for Wingstop from October 2019 through November 2019 at its restaurant located at 2410 W. Jefferson Street, Joliet, Illinois 60435.

**Answer:** NCR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore denies the same.

53.    Plaintiff Christina Skeldon worked as a Cashier/Night Shift Lead for Wingstop from November 2017 through June 2020 at its restaurant located at 2410 W. Jefferson Street, Joliet, Illinois 60435.

**Answer:** NCR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore denies the same.

54.    Plaintiffs were required to scan their fingerprints at a biometric-enabled NCR POS system to be used as an authentication method to track their time worked and to access the POS terminal.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies that its terminals were "biometric-enabled." As to the remaining allegations in this Paragraph, NCR lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies the same.

55.    Specifically, Plaintiffs were required to scan and enroll their fingerprints with Wingstop's NCR database at Wingstop's biometric-enabled NCR POS system. NCR collected and/or otherwise obtained Plaintiffs' biometric data upon Plaintiffs' enrollment at Wingstop's biometric-enabled NCR POS system.

**Answer:** NCR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of this Paragraph and therefore denies the same. NCR denies the remaining allegations in this Paragraph.

56. Plaintiffs were required to scan their fingerprints at Wingstop's biometric-enabled NCR POS system each time they accessed the POS terminal, including to clock in and out of work.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore denies the same.

57. NCR subsequently collected and stored Plaintiffs' biometric data in NCR's cloud-based database(s), maintained on NCR's hosted environments and servers, each time they scanned their fingerprints to clock-in or clock-out or otherwise access the biometric-enabled NCR POS system.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies the allegations in this Paragraph.

58. NCR did not obtain Plaintiffs' consent before disclosing or disseminating their biometric data to third parties.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR admits that, outside of this lawsuit, it has no relationship and has never communicated with Plaintiffs. NCR denies that it disclosed or disseminated Plaintiffs' biometric data to third parties. NCR denies the remaining allegations in this Paragraph.

59. NCR did not properly inform Plaintiffs in writing of the specific limited purpose(s) or length of time for which their fingerprint data was being collected, obtained, stored, used and/or disseminated.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR admits that, outside of this lawsuit, it has no relationship and has never communicated with Plaintiffs, and denies the remaining allegations in this Paragraph.

60.     Plaintiffs had never seen, been able to access, or been informed of any publicly available biometric data retention policy or guidelines developed by Defendant, nor had they ever seen, been able to access, or been informed of whether Defendant would ever permanently delete their biometric data.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies the allegations in this Paragraph.

61.     Plaintiffs have never been provided with, nor ever signed, a written release allowing NCR to collect, capture, obtain, store, use, and/or disseminate their biometric data.

**Answer:** NCR admits that, outside of this lawsuit, it has no relationship and has never communicated with Plaintiffs. NCR denies that it collected, captured, obtained, stored, used, and/or disseminated Plaintiffs' biometric data.

62.     Plaintiffs have continuously and repeatedly been exposed to the risks and harmful conditions created by Defendant's multiple violations of BIPA alleged herein.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies the allegations in this Paragraph.

63.     No amount of time or money can compensate Plaintiffs if their biometric data is or has been compromised by the lax procedures through which NCR collects, captures, obtains, stores, disseminates, and/or uses Plaintiffs' and other similarly-situated workers' biometrics. Moreover, Plaintiffs would not have provided their biometric data to Defendant if they had known that Defendant would retain such information for an indefinite period of time without their consent.

**Answer:** NCR denies the allegations contained in this Paragraph.

64.     A showing of actual damages is not necessary in order to state a claim under BIPA *See Rosenbach v. Six Flags Ent. Corp.,* 2019 IL 123186, ¶ 40 ("[A]n individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as an "aggrieved" person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act").

**Answer:** NCR admits that the quoted statements appear in *Rosenbach v. Six Flags Ent. Corp.,* 2019 IL 123186, ¶ 40, and refers to the full text of that opinion for its full and accurate

contents. Otherwise, the allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies the allegations in this Paragraph.

65.     As Plaintiffs are not required to allege or prove actual damages in order to state a claim under BIPA, they seek statutory damages under BIPA as compensation for the injuries caused by Defendant. *Rosenbach,* 2019 IL 123186, ¶ 40.

**Answer:** NCR admits that Plaintiffs seek the relief stated in this Paragraph. Otherwise, the allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies that it is any way liable to Plaintiffs, and further denies that Plaintiffs are entitled to any relief whatsoever, including the relief sought in this Paragraph.

## CLASS ALLEGATIONS

66.     Pursuant to the Illinois Code of Civil Procedure, 735 ILCS § 5/2-801, Plaintiffs bring claims on their own behalf and as representatives of all other similarly-situated individuals pursuant to BIPA, 740 ILCS § 14/1, *et seq.,* to recover statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

**Answer:** NCR admits that Plaintiffs seek the relief stated in this Paragraph, but NCR denies that it is in any way liable to Plaintiffs, denies that Plaintiffs can maintain this action as a class action, denies that the class as alleged can be certified, and further denies that Plaintiffs are entitled to any relief whatsoever, including the relief sought in this Paragraph.

67.     As discussed *supra,* Section 14/15(b) of BIPA prohibits a company from, among other things, collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifiers or biometric information, unless it *first* (1) informs the individual in writing that a biometric identifier or biometric information is being collected, obtained, or stored; (2) informs the individual in writing of the specific purpose(s) and length of time for which a biometric identifier or biometric information is being collected, obtained, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information. 740 ILCS § 14/15.

**Answer:** NCR admits that this Paragraph refers to 740 Ill. Comp. Stat. 14/15 and refers to the statute for its full and accurate contents. Otherwise, the allegations set forth in this

Paragraph consist of legal conclusions for which no response is required. To the extent a response is required, NCR denies the allegations in this Paragraph.

68.     Plaintiffs seek class certification under the Illinois Code of Civil Procedure, 735 § ILCS 5/2-801 for the following class of similarly-situated individuals under BIPA:

> All individuals in the State of Illinois who had their biometric identifier(s) and/or biometric information collected, captured, taken, received, converted, or otherwise obtained, maintained, stored, used, shared, disseminated, or disclosed by NCR during the applicable statutory period.

**Answer:** NCR admits that Plaintiffs seek the relief stated in this Paragraph, but NCR denies that it is in any way liable to Plaintiffs, denies that Plaintiffs can maintain this action as a class action, denies that the class as alleged can be certified, and further denies that Plaintiffs are entitled to any relief whatsoever, including the relief sought in this Paragraph.

69.     This action is properly maintained as a class action under 735 ILCS § 5/2- 801 because:

A.     The class is so numerous that joinder of all members is impracticable;
B.     There are questions of law or fact that are common to the class;
C.     The claims of the Plaintiffs are typical of the claims of the class; and
D.     The Plaintiffs will fairly and adequately protect the interests of the class.

**Answer** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies the allegations in this Paragraph, and further denies that it is in any way liable to Plaintiffs, denies that Plaintiffs can maintain this action as a class action, denies that the class as alleged can be certified, and denies that Plaintiffs are entitled to any relief whatsoever.

### Numerosity

70.     The total number of putative class members exceeds fifty (50) individuals. The exact number of class members can easily be determined from Defendant's records.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR lacks knowledge or information

sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore denies the same.

**<u>Commonality</u>**

71.     There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Class in that Plaintiffs and all members of the Class have been harmed by Defendant's failure to comply with BIPA The common questions of law and fact include, but are not limited to the following:

A.     Whether Defendant collected, captured, or otherwise obtained Plaintiffs' and the Class members' biometric identifiers or biometric information;

B.     Whether Defendant properly informed Plaintiffs and the Class members of its purposes for collecting, obtaining, using, storing, and disseminating their biometric identifiers or biometric information;

C.     Whether Defendant obtained a written release (as defined in 740 ILCS § 14/10) to collect, obtain, use, store, and disseminate Plaintiffs' and the Class members' biometric identifiers or biometric information;

D.     Whether Defendant has disclosed or re-disclosed Plaintiffs' and the Class members' biometric identifiers or biometric information;

E.     Whether Defendant has sold, leased, traded, or otherwise profited from Plaintiffs' and the Class members' biometric identifiers or biometric information;

F.     Whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction with the individual, whichever occurs first;

G.     Whether Defendant used Plaintiffs' and the Class members' biometric identifiers to identify them;

H.     Whether Defendant's violations of BIPA have raised a material risk that Plaintiffs' and the putative Class members' biometric identifiers and/or biometric information will be unlawfully accessed by third parties;

I.     Whether Defendant's violations of BIPA were committed negligently; and

J.     Whether Defendant's violations of BIPA were committed intentionally and/or recklessly.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies the allegations in this Paragraph, and further denies that it is in any way liable to Plaintiffs, denies that Plaintiffs can maintain this action as a class action, denies that the class as alleged can be certified, and denies that Plaintiffs are entitled to any relief whatsoever.

72. Plaintiffs anticipate that Defendant will raise defenses that are common to the class.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR lacks knowledge or information sufficient to form a belief as to what "Plaintiffs anticipate," and on that basis denies the allegations in this Paragraph. NCR further denies that it is in any way liable to Plaintiffs, denies that Plaintiffs can maintain this action as a class action, denies that the class as alleged can be certified, and further denies that Plaintiffs are entitled to any relief whatsoever.

## Adequacy

73. Plaintiffs will fairly and adequately protect the interests of all members of the Class, and there are no known conflicts of interest between Plaintiffs and the Class members. Plaintiffs, moreover, have retained experienced counsel who are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR lacks knowledge or information sufficient to form a belief as to whether Plaintiffs "have retained experienced counsel who are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel," and on those bases denies those allegations in this Paragraph. NCR denies the remaining allegations in this Paragraph, and further denies that it is in any way liable to Plaintiffs, denies that Plaintiffs can maintain this action as a class action, denies that the class as alleged can be certified, and denies that Plaintiffs are entitled to any relief whatsoever.

## Typicality

74. The claims asserted by Plaintiffs are typical of the Class they seek to represent. Plaintiffs have the same interests and suffer from the same unlawful practices as the Class members.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies the allegations in this Paragraph and further denies that it is in any way liable to Plaintiffs, denies that Plaintiffs can maintain this action as a class action, denies that the class as alleged can be certified, and denies that Plaintiffs are entitled to any relief whatsoever.

75. Upon information and belief, there are no other Class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to 735 ILCS § 5/2-801.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR lacks knowledge or information sufficient to form a belief as to whether there are "other class members who have an interest individually controlling the prosecution of his or her individual claims," and on those bases denies the allegations in this Paragraph. NCR further denies that it is in any way liable to Plaintiffs, denies that Plaintiffs can maintain this action as a class action, denies that the class as alleged can be certified, and further denies that Plaintiffs are entitled to any relief whatsoever.

## Predominance and Superiority

76. The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of

individual litigation would make it difficult for individual class members to vindicate their claims.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies the allegations in this Paragraph. NCR further denies that it is in any way liable to Plaintiffs, denies that Plaintiffs can maintain this action as a class action, denies that the class as alleged can be certified, and denies that Plaintiffs are entitled to any relief whatsoever.

77.    Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent a response is required, NCR denies the allegations in this Paragraph. NCR further denies that it is in any way liable to Plaintiffs, denies that Plaintiffs can maintain this action as a class action, denies that the class as alleged can be certified, and further denies that Plaintiffs are entitled to any relief whatsoever.

## FIRST CAUSE OF ACTION
### Violation of 740 ILCS § 14/15(a): Failure to Institute, Maintain and Adhere to Publicly-Available Retention Schedule

78.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

**Answer:** NCR incorporates its foregoing responses as if fully set forth herein.

79.     BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention-and, importantly, deletion-policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS § 14/15(a).

**Answer:** NCR refers to 740 Ill. Comp. Stat. 14/15(a) for a complete and accurate account of its contents. Otherwise, the allegations set forth in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies the allegations in this Paragraph.

80.     Defendant failed to comply with these BIPA mandates.

**Answer:** The allegation set forth in this Paragraph is a legal conclusion for which no response is required. To the extent facts are alleged, NCR denies the allegation in this Paragraph.

81.     Defendant is a corporation registered to do business in Illinois and therefore qualifies as "private entity" under BIPA. *See* 740 ILCS § 14/10.

**Answer:** NCR admits that it is registered to do business in Illinois. The remaining allegations set forth in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies the allegations in this Paragraph.

82.     Plaintiffs and the Class members are individuals who have had their "biometric identifiers" (in the form of their fingerprints) collected and/or obtained by Defendant, as explained in detail in Sections II and III, *supra. See* 740 ILCS § 14/10.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies the allegations in this Paragraph.

83. Plaintiffs' and the Class members' biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies the allegations in this Paragraph.

84. Defendant failed to provide any publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA *See* 740 ILCS § 14/15(a).

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies the allegations in this Paragraph.

85. Defendant lacked retention schedules and guidelines for permanently destroying Plaintiffs' and the Class members' biometric data and did not destroy Plaintiffs' and the Class's biometric data when the initial purpose for collecting or obtaining such data had been satisfied within three years of the individual's last interaction with the company.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies the allegations in this Paragraph.

86. On behalf of herself and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with BIPA's requirements for the collection, obtainment, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

**Answer:** NCR admits that Plaintiffs seek the relief stated in this Paragraph. NCR denies that it is any way liable to Plaintiffs, and further denies that Plaintiffs are entitled to any relief whatsoever, including the relief sought in this Paragraph.

## SECOND CAUSE OF ACTION
### Violation of 740 ILCS § 14/15(b): Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or Information

87.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

**Answer:** NCR reincorporates its responses as if fully set forth herein.

88.     BIPA requires companies to obtain informed written consent from individuals before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject ... in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject... in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information ...." 740 ILCS § 14/15(b) (emphasis added).

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR admits that the quoted statements appear in 740 Ill. Comp. Stat. 14/15(b). Otherwise, NCR refers to 740 Ill. Comp. Stat. 14/15(b) for a complete and accurate statement of its contents, and denies the allegations in this Paragraph.

89.     Defendant failed to comply with these BIPA mandates.

**Answer:** The allegation in this Paragraph is a legal conclusion for which no response is required. To the extent facts are alleged, NCR denies the allegation in this Paragraph.

90.     Defendant is a corporation registered to do business in Illinois and therefore qualifies as a "private entity" under BIPA *See* 740 ILCS § 14/10.

**Answer:** NCR admits that it is registered to do business in Illinois. The remaining allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies the allegations in this Paragraph.

91.     Plaintiffs and the Class members are individuals who have had their "biometric identifiers" (in the form of their fingerprints) collected and/or obtained by Defendant, as explained in detail in Sections II and III, *supra. See* 740 ILCS § 14/10.

**Answer:** The allegation in this Paragraph is a legal conclusion for which no response is required. To the extent facts are alleged, NCR denies the allegation in this Paragraph.

92.     Plaintiffs' and the Class members' biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

**Answer:** The allegation in this Paragraph is a legal conclusion for which no response is required. To the extent facts are alleged, NCR denies the allegation in this Paragraph.

93.     Defendant systematically and automatically collected, obtained, used, stored, and disseminated Plaintiffs' and the Class members' biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS § 14/15(b)(3).

**Answer:** The allegations in this Paragraph are legal conclusions for which no response is required. To the extent facts are alleged, NCR denies the allegations in this Paragraph.

94.     Defendant did not properly inform Plaintiffs and the Class members in writing that their biometric identifiers and/or biometric information were being collected, obtained, stored, used, and disseminated, nor did Defendant properly inform Plaintiffs and the Class members in writing of the specific purpose(s) and length of term for which their biometric identifiers and/or biometric information were being collected, obtained, stored, used, and disseminated as required by 740 ILCS § 14/15(b)(1)-(2).

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR admits that, outside of this lawsuit, it has no relationship and has never communicated with Plaintiffs. NCR denies the remaining allegations in this Paragraph.

95. By collecting, obtaining, storing, using, and disseminating Plaintiffs' and Class members' biometric identifiers and biometric information as described herein, Defendant violated Plaintiffs' and the Class's rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA *See* 740 ILCS 14/1, *et seq.*

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies the allegations in this Paragraph.

96. On behalf of herself and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with BIPA's requirements for the collection, obtainment, storage, use, and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**Answer:** NCR admits that Plaintiffs seek the relief stated in this Paragraph. NCR denies that it is any way liable to Plaintiffs, and further denies that Plaintiffs are entitled to any relief whatsoever, including the relief sought in this Paragraph.

### THIRD CAUSE OF ACTION
**Violation of 740 ILCS § 14/15(d): Disclosure of Biometric Identifiers and Information Before Obtaining Consent**

97. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

**Answer:** NCR incorporates the foregoing responses as if fully set forth herein.

98. BIPA prohibits private entities from disclosing a person's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

**Answer:** The allegation in this Paragraph is a legal conclusion for which no response is required. To the extent facts are alleged, NCR admits that this Paragraph refers to 740 Ill. Comp. Stat. 14/15(c) and NCR refers to the statute for a full and accurate account of its content. NCR denies the remaining allegation in this Paragraph.

99. Defendant fails to comply with this BIPA mandate.

**Answer:** The allegation in this Paragraph is a legal conclusion for which no response is required. To the extent facts are alleged, NCR denies the allegation in this Paragraph.

100. Defendant is a corporation registered to do business in Illinois and therefore qualifies as "private entity" under BIPA. *See* 740 ILCS § 14/10.

**Answer:** NCR admits that it is registered to do business in Illinois. The remaining allegation in this Paragraph consists of a legal conclusion for which no response is required. To the extent facts are alleged, NCR denies the allegations in this Paragraph.

101. Plaintiffs and the Class members are individuals who have had their "biometric identifiers" (in the form of their fingerprints) collected and/or obtained by Defendant, as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies the allegations in this Paragraph.

102. Plaintiffs' and Class members' biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies the allegations in this Paragraph.

103. Defendant systematically and automatically disclosed, redisclosed, or otherwise disseminated Plaintiffs' and the Class's biometric identifiers and/or biometric information without first obtaining the consent required by 740 ILCS 14/15(d)(1).

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies the allegations in this Paragraph.

104. By disclosing, redisclosing, or otherwise disseminating Plaintiffs' and the Class members' biometric identifiers and biometric information as described herein, Defendant

violated Plaintiffs' and the Class's rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA *See* 740 ILCS 14/1, *et seq.*

**Answer:** The allegations in this Paragraph consist of legal conclusions for which no response is required. To the extent facts are alleged, NCR denies the allegations in this Paragraph.

105. On behalf of herself and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with BIPA's requirements for the collection, obtainment, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

**Answer:** NCR admits that Plaintiffs seek the relief stated in this Paragraph. NCR denies that it is any way liable to Plaintiffs, and further denies that Plaintiffs are entitled to any relief whatsoever, including the relief sought in this Paragraph.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs Michele Johnson and Christina Skeldon respectfully request that this Court enter an Order:

A.   Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiffs Michele Johnson and Christina Skeldon as Class Representatives, and appointing Stephan Zouras, LLP, as Class Counsel;

B.   Declaring that Defendant's actions, as set forth above, violate BIPA;

C.   Awarding statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1);

D.   Declaring that Defendant's actions, as set forth above, were intentional or reckless;

E.   Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and the Class, including an Order requiring Defendant to comply with BIPA when possessing, collecting, obtaining, storing, using,

destroying, and/or disseminating biometric identifiers and/or biometric information;

F.  Awarding Plaintiffs and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3);

G.  Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

H.  Awarding any such other and further relief as equity and justice may require.

**Answer:** NCR admits that Plaintiffs seek certain relief in subparagraphs A through H of this Paragraph. NCR denies that it is any way liable to Plaintiffs, and further denies that Plaintiffs are entitled to any relief whatsoever, including the relief sought in subparagraphs A through H.

## AFFIRMATIVE AND OTHER DEFENSES

NCR Corporation ("NCR"), in further response and defense to Plaintiffs' Class Action Complaint, and without waiver of Plaintiffs' obligation to plead and prove each and every element of their claims, sets forth below its affirmative defenses, which are asserted as to all claims by Plaintiffs. By setting forth these affirmative defenses, NCR does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiffs. Nothing in these affirmative defenses is intended or should be construed as an admission that any issue or subject matter is relevant to Plaintiffs' allegations or claims.

### First Affirmative Defense
### (Lack of Possession)

Plaintiffs' and the putative class members' claims are barred, in whole or in part, because NCR did not and does not collect, capture, obtain, use, store, or possess biometric data.

### Second Affirmative Defense
### (Third Parties)

Plaintiffs' and the putative class members' claims are barred, in whole or in part, because the allegations are the results of acts or omissions of persons or entities over whom NCR has neither control nor responsibility.

### Third Affirmative Defense
### (Consent)

Plaintiffs' and the putative class members' claims are barred, in whole or in part, because Plaintiffs and the putative class members affirmatively and actively consented and agreed, either expressly or impliedly, and without threat, coercion, or compulsion, to the conduct that is alleged to violate BIPA—the non-invasive use of timeclocks as part of the time keeping procedures at their place of employment, including with respect to the use of a device capable of capturing certain vectors from a putative class member's finger. Upon information and belief, Plaintiffs knew how the timeclocks worked and continued to voluntarily use the timeclocks without making any inquiry as to their collection, use, or retention of personal information.

### Fourth Affirmative Defense
### (Estoppel, Ratification, Acquiescence & Waiver)

Plaintiffs' and the putative class members' claims are barred, in whole or in part, under the doctrines of estoppel, acquiescence, ratification, and waiver. Plaintiffs and each putative class member affirmatively approved and participated in, without threat, coercion, or compulsion, the conduct that is alleged to violate BIPA—the non-invasive use of timeclocks as part of the time keeping procedures at their place of employment, including with respect to the scanning of a finger. Upon information and belief, Plaintiffs knew how the timeclocks worked and continued

to voluntarily use the timeclocks without making any inquiry as to their collection, use, or retention of personal information.

## Fifth Affirmative Defense
### (Good Faith, Substantial Compliance)

Plaintiffs' and the putative class members' claims are barred, in whole or in part, because the timeclocks provided by NCR to its customers do not collect, store, or capture "biometric identifiers" or "biometric information" as defined by BIPA. To the extent that the statute applies to the timeclocks provided by NCR to its customers, the claims are barred, in whole or in part, based on NCR's good faith and reasonable interpretation of BIPA, substantial compliance therewith, and absence of any intentional, reckless, or negligent violation of BIPA.

## Sixth Affirmative Defense
### (No Relationship with NCR)

Plaintiffs' and the putative class members' claims are barred, in whole or in part, because Plaintiffs and the putative class members were not employed by NCR, have never communicated with NCR, and have no relationship whatsoever with NCR.

## Seventh Affirmative Defense
### (Assumption of Risk & Comparative Negligence)

Plaintiffs' and the putative class members' claims are barred, in whole or in part, by the doctrines of assumption of risk and comparative negligence. Upon information and belief, Plaintiffs and each putative class member were fully aware of any privacy risks associated with use of the timeclocks yet approved and participated in the conduct of which they now complain—and therefore implicitly consented to encounter any such risks—by voluntarily presenting their finger to be scanned in connection with Wingstop's use of the timeclocks provided by NCR.

## Eighth Affirmative Defense
### (Violation of Due Process)

Plaintiffs' prayer for relief is barred, in whole or in part, because an award of statutory liquidated damages under Section 740 Ill. Comp. Stat. 14/20(1) or (2) would violate NCR's due process rights. On behalf of themselves and the putative class members, Plaintiffs seek an award of $5,000 for each willful or reckless violation of BIPA and $1,000 for each negligent violation. Each instance of noncompliance with the separate provisions of BIPA has been found to constitute a distinct violation for purposes of claim accrual, *Cothron v. White Castle Sys., Inc.*, 2023 IL 128004 (Feb. 17, 2023), and Plaintiffs have defined the putative class as "[a]ll individuals in the State of Illinois who had their biometric identifier(s) and/or biometric information collected, captured, taken, received, converted, or otherwise obtained, maintained, stored, used, shared, disseminated, or disclosed by NCR during the applicable statutory period."

The ruling in *Cothron* goes on to state that courts have discretion to award any amount of damages it sees fit, leaving NCR with potential damages ranging from zero to an astronomical amount. Moreover, any recovery from NCR—who did not employ and has no relationship with Plaintiffs or, to its knowledge, with any putative class member—would amount to a disparate penalty, akin to punitive damages, given that Plaintiffs and the putative class members have not suffered any injury or harm to warrant such relief. Accordingly, any such recovery from NCR—who did not employ any putative class member—would be arbitrary, grossly excessive, exorbitant, and disproportionate to the bare procedural or technical violation of BIPA that Plaintiffs allege, without any injury or harm, and thereby violate the Due Process Clause of the United States Constitution.

## Reservation of Right to Amend

NCR reserves the right to assert additional defenses, counterclaims, crossclaims, or third-party claims as they become known throughout the course of this litigation and as may become available under Illinois law.

Date:   March 20, 2023

Respectfully Submitted,
*/s/ Kathleen L. Carlson*
One of Its Attorneys


Kathleen L. Carlson
Lawrence P. Fogel
Andrew F. Rodheim
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
312-853-7000
312-853-7036 (fax)
kathleen.carlson@sidley.com
lfogel@sidley.com
arodheim@sidley.com

Brian W. Tobin
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
213-896-6000
213-896-6600 (fax)
btobin@sidley.com

*Counsel for Defendant NCR Corporation*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on March 20, 2023 she caused NCR's Answer to Plaintiffs' Class Action Complaint to be served through the United States District Court for the Northern District of Illinois' PACER system on all counsel of record in the above captioned matter.

*/s/ Kathleen L. Carlson*